**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------- x

WORLDWIDE FUN LTD., and            :

SMILING ALBINO LTD.,                :    **DOC NO.: 1:17-CV-3418**

                                :    **(VEC) (KHP)**

             Plaintiffs,         :

                                  :

            -against-           :

                                  :

SANUK ENTERPRISES, INC., KENNETH FISH d/b/a   :

ABSOLUTE TRAVEL, and GUY CHIRICO,       :

                                  :

            Defendants.        :

------------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT KENNETH FISH**

Jennifer Redmond (JR 0387)
REDMOND LAW PLLC
Attorneys for Plaintiffs
Worldwide Fun Ltd.
and Smiling Albino Ltd.
80 Broad Street – Suite 1202
New York, NY 10004
Telephone: 212-799-8989

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. III

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS .................................................................................. 1

STANDARD OF REVIEW .................................................................................. 2

SANUK'S CORPORATE VEIL MUST BE PIERCED BECAUSE FISH USED SANUK AS HIS ALTER EGO ..................................................................................................... 3

    A.   Corporate Domination Analysis ............................................................ 5

       i.   Absence of Corporate Formalities ............................................... 5

       ii.   Inadequate Capitalization ............................................................ 6

       iii.   Personal Use of Corporate Assets and Corporate Use of Personal Assets ................... 8

       iv.   Payment or Guarantee of Debts of Sanuk by Fish ........................ 9

    B.   Fish Committed Fraud and/or Wrongful Acts Upon Smiling Albino through Sanuk ........ 9

CONCLUSION ..................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 134 (2d Cir. 1997) ...................... 4

*American Protein Corp. v. AB Volvo*, 844 F. 2d 56, 60 (2d Cir. 1988).......................................... 3

*Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) ........................................................ 3

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) ........................................................... 2, 3

*Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009)...................................... 2

*FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) .................................................... 3

*JSC Foreign Econ. Assn Technostroyexport v. Int'l Dev. & Trade Servs.*, 386 F. Supp. 2d 461

(S.D.N.Y. 2005) ....................................................................................................................... 9

*Marine Midland Bank N.A. v. Miller*, 664 F. 2d 899, 903 (2d Cir. 1981) ..................................... 3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)............................ 3

*Morris v. State Dep't of Taxation and Fin.*, 82 N.Y.2d 135, 140 (1993).................................. 3, 9

*Sharkey v. Ultramar Energy Ltd.*, 867 F. Supp. 258 (S.D.N.Y. 1994).......................................... 4

*Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 430 (S.D.N.Y. 2010).................... 3, 4

*United States v. Ingredient Technology Corp.*, 698 F.2d 88, 94-95 (2d Cir. 1983) ...................... 5

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc. et al.*, 933 F. 2d 131, 138 (2d

Cir. 1990) ........................................................................................................................ 3, 4, 9

**Statutes**

Fed. R. Civ. P. 56 ............................................................................................................... 1, 2

## PRELIMINARY STATEMENT

Plaintiffs, Worldwide Fun Ltd. and Smiling Albino Ltd. (collectively "Smiling Albino" or "Plaintiffs"), respectfully submit this brief in support of its Motion for Partial Summary Judgment against Defendant Kenneth Fish ("Fish") pursuant to Federal Rules of Civil Procedure 56 on the second cause of action (Breach of Contract) asserted in Plaintiffs' Amended Complaint.

Smiling Albino seeks summary judgment on its alter ego claim against Fish, holding Fish responsible for the liabilities of defendant Sanuk Enterprises, Inc. d/b/a/ Absolute Travel ("Sanuk"). Default judgment was entered against Sanuk on September 8, 2017, by this Court for Plaintiffs claim for breach of contract.

After significant discovery, Smiling Albino has established that Fish exercised continuous domination and control over Sanuk and Fish used his domination of Sanuk to commit fraud and/or wrongful acts against Smiling Albino. Specifically, Fish defrauded and/or wronged Smiling Albino by accepting payment for services that Fish did not intend to repay. Smiling Albino's proofs that Fish exercised continuous domination and control over Sanuk come from Fish's testimony, the testimony of former Sanuk employees, and financial records for Sanuk and Fish. As a result, the Court should disregard the alleged separateness of Fish and Sanuk and hold Fish personally liable for Sanuk's liabilities.

## STATEMENT OF FACTS

Fish operated Sanuk, a travel company, which planned customized luxury travel tours for clients in New York. Fish Dep.[1] 10:20 – 13:11. Sanuk and Fish booked travel tours and services for their clients with Smiling Albino. Fish Dep. 17:20 – 20:3. Sanuk and Fish, entered into an

---

[1] "Fish Dep." refers to the deposition of Kenneth Fish taken in this matter on December 17, 2017, Exhibit C.

agreement with Smiling Albino for Smiling Albino to provide book travel services for Defendant's clients at Defendant's requests. (Fraser Aff. ¶ 4, Exh. D)   The agreement required that Sanuk and Fish collect and remit payment to Smiling Albino after Defendants' clients received services from Smiling Albino within two weeks of a receiving an invoice from Smiling Albino.  (Fraser Aff. ¶6, Exh. E). Smiling Albino tendered invoices to Defendants for payment for providing these services to Defendants' clients. (Exh. E).  Beginning in 2010, Defendants payments to Smiling Albino were untimely or incomplete, with significant untimely or incomplete payments arising in 2016.  (Fraser Aff. ¶8).   Fish sent multiple emails to Smiling Albino with proposed payment plans that ultimately were never completed, with significant debts accrued in 2016. (Redmond Aff, ¶4, Exh. F; Fish Dep. 153:8-18.) Fish sent incomplete payments from his personal bank account directly to Smiling Albino for some of the outstanding invoices. *Id.*  Beginning in February 2017, Defendants stopped remitting payments to Smiling Albino entirely, leaving Defendants with an outstanding balance due and owing Smiling Albino of at least $368,829.91 from services provided from 2016 to 2017. (Fraser Aff. ¶13).   Default judgment was entered against Sanuk on September 8, 2017, in this action by this Court.

## STANDARD OF REVIEW

The Court must grant summary judgment when, viewing the evidence in a light most favorable to the nonmoving party, there is a "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). When the burden of proof at trial will fall on the nonmoving party, it is "sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex*, 477 U.S. at 322– 23). The nonmoving party must then come

2

forward with "admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Id.* (citing *Celotex*, 477 U.S. at 322–23). In so doing, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" and "may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)). "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Brown*, 654 F.3d at 358 (internal citations omitted).

## SANUK'S CORPORATE VEIL MUST BE PIERCED BECAUSE FISH USED SANUK AS HIS ALTER EGO

When a corporation acts as an alter ego for an individual, then the corporate veil may be pierced. *See Marine Midland Bank N.A. v. Miller*, 664 F. 2d 899, 903 (2d Cir. 1981). Similarly, when a corporation is used by an individual to carry out his own and not the corporation's business, such a controlling shareholder may be held liable for the corporation's conduct. *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc. et al.*, 933 F. 2d 131, 138 (2d Cir. 1990). The Court may disregard the corporate form if it finds that the "control" exercised by the individual was fraudulently or wrongfully used to cause the plaintiff's loss. *American Protein Corp. v. AB Volvo*, 844 F. 2d 56, 60 (2d Cir. 1988); *see also Morris v. State Dep't of Taxation and Fin.*, 82 N.Y.2d 135, 140 (1993).

The place of incorporation determines which state law will govern the veil-piercing analysis. *See Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 430 (S.D.N.Y. 2010). Sanuk is incorporated under the laws of New York. Fish Dep. 266:21 – 267:7. Under New York law, a party attempting to pierce the corporate veil must prove: "(1) the owner exercised complete

domination over the corporation with respect to the transaction at issue; and (2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Id.* (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 134 (2d Cir. 1997)). While the second prong is self-explanatory, the first prong warrants discussion. With respect to the first prong, courts have enunciated a list of factors that tend to identity a dominated entity:

> (1) whether corporate formalities are observed, (2) whether the capitalization is adequate, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) whether there is overlap in ownership, officers, directors, and personnel, (5) whether the corporate entities share common office space, address and telephone numbers, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the alleged dominator deals with the dominated corporation at arms length, (8) whether the corporation is treated as an independent profit center, (9) whether others pay or guarantee debts of the dominated corporation, and (10) whether the corporation in question had property that was used by the alleged dominator as if it were the dominator's own.

*Am. Fuel Corp.*, 122 F. 3d at 134. No one factor is determinative and the courts must consider the totality of the circumstances to determine whether the party seeking to pierce the corporate veil has satisfied the domination prong of the test. *See Wm. Passalacqua Builders, Inc.*, 933 F.2d at 139.

This Court is constrained under New York law to disregard corporate forms, and to re-characterize persons or companies to conform with their substance, not merely their technical form, when that technical form is a sham used to mislead an innocent party to its detriment. *Sharkey v. Ultramar Energy Ltd.*, 867 F. Supp. 258 (S.D.N.Y. 1994), *rev'd on other grounds*, 70 F.3d 226 (2d Cir. 1995) ("A party misled or disadvantaged by a corporate or other business structure created by another person or entity may ask that any sham structure be recharacterized in accordance with substance rather than form."); *see also United States v. Ingredient Technology*

4

*Corp.*, 698 F.2d 88, 94-95 (2d Cir.), cert. denied 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983).

After completion of discovery, Smiling Albino is able to demonstrate sufficient proof to support piercing the corporate veil of Sanuk. All of above factors favor piercing the veil in this action and holding Fish liable for all awards against Sanuk in this action.

### A. Corporate Domination Analysis

As discussed further *infra*, based upon the established factors for determining complete domination of a corporate entity, there is no issue of material fact in dispute that Fish did completely dominate Sanuk.

### i. Absence of Corporate Formalities

There is no dispute that Fish did not observe corporate formalities in his operation of Sanuk. Fish testified when questioned about other senior staff of Sanuk, "There is no written document that makes him an officer. There was no board -- no board meetings or minutes or anything to that effect." (Fish Dep. 91:12 – 16). When questioned about Sanuk's corporate board meetings, Fish answered "I was the owner, the sole owner of the company." (Fish Dep. 91:19 – 20). Fish has produced no records demonstrating corporate meetings or minutes that were maintained during his tenure as president of Sanuk. Similarly, Fish never produced Sanuk's business plan or articles of incorporation, requested at Fish's deposition. (Fish Dep. 266:14 – 267:22.) When asked if other Sanuk employees worked with Fish on Sanuk's financial matters, Fish stated, "No, actually it was always me." (Fish Dep. 144:3).

Fish stated during his deposition that he gave Guy Chirico, a Sanuk employee, the title of Chief Operating Officer because Fish wanted to obtain new investors for Sanuk, even though Mr. Chirico was not in fact an officer of Sanuk. (Fish Dep. 90:2- 93:4). Fish also changed the managing

director Leslie Overton's title to Executive Vice President, when in fact Ms. Overton was not an officer of Sanuk, to attract investors to Sanuk. (Fish Dep. 96:13 – 97:12). In addition, Ms. Overton and Alexandra Lehman, another former Sanuk employee, both state in their affidavits that Fish did not maintain or observe any corporate formalities. (Overton Aff. ¶4; Lehman Aff. ¶ 9).

Fish's failure to hold annual meetings, maintain minutes, and his flippant use of corporate titles to induce investors demonstrates his disregard of corporate formalities. Accordingly, there is no dispute that Fish ignored corporate formalities and used misleading corporate titles to attract investors while exercising complete and direct control as the "sole owner" of Sanuk.

### ii.    Inadequate Capitalization

Multiple times during his deposition, Fish acknowledged that Sanuk was undercapitalized for an extended period of time, yet continued to accept money from clients and failed to pay Smiling Albino and other suppliers. Fish said "It was only in the last couple of years that the losses that started to magnify because I had this huge financial cost, and then my overhead also increased, and I put money into the capitalization of the new office and made a, you know, security deposit of $200,000 in the new office.  You used the resources you had, but it became acute in the last two years." (Fish Dep. 55:23-25, 56:1-8).

Fish also stated that Sanuk "had been under pressure for some time, but I handled it all the time, and I had good relationships with our suppliers, and they understood what was going on.  I was very transparent, and many of the based on our long-term relationship extended terms to me. I was still seeking additional financing.  It's – actually I kind of got a green light on some finance, but it was too late because I – the company wasn't operating, and there was no money in the bank." (Fish Dep. 50:19-25, 51:1-7). However, Fish has failed to produce any such agreement between himself and Smiling Albino demonstrating that Smiling Albino agreed to extend terms to Sanuk.

6

In fact, starting in 2016, when Sanuk failed to pay Smiling Albino in full for past due invoices, Fish sent an email to Smiling Albino proposing a payment plan. (Redmond Aff, ¶4 Exh. F; Fish Dep. 153:8-18.)   Fish revealed during his deposition that as the debts stacked, he paid those that would prioritize payments that would "keep Sanuk doing business at the time." (Fish Dep. 155:13-17). Despite that Sanuk could not pay Smiling Albino and other suppliers for already paid for and provided trips, it continued to book more and more travel, knowing that it could not satisfy its ever-growing debt, treating its suppliers that it owed money to as creditors to keep Sanuk afloat.  (Fish Dep. 154:16 – 157:20).

Fish exploited Smiling Albino's lack of requirements for prepayment services, and prioritized payments to other suppliers to keep Sanuk afloat, allowing Sanuk to continue business far past when it should have. Fish confirmed that he could not even maintain the payment plan Sanuk created for its past due amounts to Smiling Albino and that he had to use his wife's personal credit card to remit payment to Smiling Albino because his personal credit card, Sanuk's credit card and all other lines of credit were maxed out. (Fish Dep. 173:5-12). The only reason Smiling Albino continued to do business with Sanuk was because of Fish's communications to Smiling Albino that it was obtaining financing to pay the debts owed to Smiling Albino.  (Fraser Aff. ¶10).

Further, Fish also stated during his deposition that Sanuk started trying to find investors in early 2016 but could not because Sanuk lacked capital:

> "we talked to investors in earnest would have been in the spring of 2016, and, you know, we sort of found out what they were looking for, and they liked to have companies with existing profits and not a vision of how to make money.  So, you know, we had to find somebody who shared our vision, and, you know, the fact of the matter is that the travel industry, especially our end of the industry, you know, it is a beautiful product, and just like say you have people who invest in Broadway shows because they want to become part of that I thought it was very reasonable to find somebody who really

> had a passion for travel and shared our passion and wanted – would
> want to be behind what – what we were doing."

(Fish Dep. 54:19-25, 55:1-7).

As late as March 13, 2017, Fish was seeking loans of $750,000 to keep Sanuk operating, which were to be used for payments in addition to what Sanuk owed to Smiling Albino. Fish Dep. 178:6-24. Sanuk's undercapitalization was so severe that Fish utilized loans from his mother in order to pay off Fish's debts and Sanuk's debts. (Redmond Aff. ¶22, Exh. I.) Alexandra Lehman and Leslie Overton both note in their affidavits that they resigned from Sanuk in March 2017, when Sanuk stopped paying its employees. (Overton Aff. ¶¶1, 17; Lehman Aff. ¶¶1, 7.)

Accordingly, there can be no doubt that Sanuk was undercapitalized due to Fish's direction and control and Fish continued to engage Smiling Albino's services despite knowing of Sanuk's dire financial state.

### iii.     Personal Use of Corporate Assets and Corporate Use of Personal Assets

Fish used a credit card in his personal name for Sanuk's expenses. (Redmond Aff ¶33, Exh. L; Fish Dep. 166:12-15, 173:15-23). He also used his wife Kyoko's personal credit card for Sanuk expenses, reimbursing her at a later date from Sanuk.  (Fish Dep. 171:12- 172:19, 174:14-22.)

In addition to Fish's admissions, the evidence demonstrates that Fish spent hundreds of thousands of dollars on personal expenses, including meals and clothing, using Sanuk accounts. A credit card for Sanuk shows payments made to: payment of $16,500.00 on February 10, 2016 to the CORE Club; a transfer of $28,000.00 on August 18, 2016 to Kenneth Fish's and Kyoko Honma's checking account; a transfer of $17,500.00 on November 15, 2016 to Kenneth Fish's and Kyoko Honma's checking account; a transfer of $20,000.00 on December 15, 2016 to Kenneth Fish's and Kyoko Honma's checking account; a wire transfer of $8,000.00 to Kenneth Fish and Kyoko Honma on January 3, 2017; as well as checks made out to Kenneth Fish in the amounts of

8

$18,000.00 on January 25, 2017 and $40,000.00 on January 31, 2017, and $25,000 on February 27, 2017. (Redmond Aff ¶27, Exh. J). Furthermore, Fish would make payments to himself by writing checks to himself or his joint account with Kyoka Honma from Sanuk's corporate account. Id. Additionally, Fish would have personal deposits placed into Sanuk's corporate accounts, including in one instance a six-figure payment from Yale University. *Id.*

Alexandra Lehman and Leslie Overton both note in their affidavits personally witnessing Fish's co-mingling of Fish's personal funds and expenses with Sanuk's accounts. (Overton Aff. ¶¶5-11; Lehman Aff. ¶¶10-13). Therefore, there is no dispute that there was extensive comingling of Fish's funds and Sanuk's funds.

### iv.    Payment or Guarantee of Debts of Sanuk by Fish

Fish produced executed copies of a secured note, guaranty agreement, mortgage agreement, and confession of judgment related to a loan issued to Sanuk guaranteed personally by Fish and Kyoko Honma for $800,000.00 on February 5, 2015. (Redmond Aff ¶35, Exh. J).  Fish also produced unexecuted versions of the same documents dated April 18, 2014 Id.   Therefore, it is without dispute that Fish and his wife personally guaranteed Sanuk's debts.

### B. Fish Committed Fraud and/or Wrongful Acts Upon Smiling Albino through Sanuk

Under New York law, a plaintiff must show that the alleged dominator's "domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury." *Morris*, 623 N.E.2d at 1160-61 (emphasis added); *see also Passalacqua*, 933 F.2d at 141 (finding that, under New York law, plaintiff seeking to pierce corporate law was not required to prove fraud); *see also JSC Foreign Econ. Assn Technostroyexport v. Int'l Dev. & Trade Servs.*, 386 F. Supp. 2d 461 (S.D.N.Y. 2005) (granting summary judgment in favor of plaintiff and holding that

9

individual defendants were the alter egos of the defendant corporation and therefore liable for the corporation's debts).

Default judgment has already been entered against Sanuk for Sanuk's breach of contract. Accordingly, Plaintiffs have already demonstrated they suffered damages due to fraud and/or wrongful acts. For the purposes of this motion, Fish defrauded and/or wronged Smiling Albino through Sanuk by inducing Smiling Albino to continue providing services to Sanuk while Fish knew Sanuk could not satisfy its debts to Smiling Albino. Smiling Albino continued to provide services to Sanuk in reliance on Fish's assurances that Sanuk would satisfy its outstanding debts to Smiling Albino. (Fraser Aff. ¶10). Sanuk's outstanding balance for services rendered is $368,829.91, which Fish acknowledged in his emails to Smiling Albino and in his deposition testimony.

As a result, Smiling Albino has established indisputable facts necessary to demonstrate that Fish used his domination of Sanuk to commit a fraud or wrong that injured the Smiling Albino, the second prong of a veil piercing/alter ego analysis, and Sanuk's corporate veil must be pierced.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Smiling Albino's Motion for Partial Summary Judgment in its entirety, holding Fish personally liable for Sanuk's debts.

Dated: New York, New York
        January 26, 2018

                                                  Respectfully submitted,

                                                  _____
                                                  Jennifer Redmond, Esq. (JR 0387)
                                                  Redmond Law PLLC
                                                  80 Broad Street, Suite 1202
                                                  New York, New York 10004
                                                  212-799-8989